**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT BRASWELL, Individually and on Behalf of All Others Similarly Situated, | Case No. 17-cv-00853 |
| Plaintiff, | CLASS ACTION |
| v. | |
| STEMLINE THERAPEUTICS, INC., IVAN BERGSTEIN and DAVID GIONCO, Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Robert Braswell ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Stemline Therapeutics, Inc. ("Stemline Therapeutics" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.    This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired Stemline Therapeutics common stock between January 20, 2017 and February 1, 2017, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Stemline Therapeutics is clinical stage Biopharmaceutical company focused on discovering, acquiring, developing and commercializing proprietary oncology therapeutics. The Company is currently developing three clinical stage product candidates, SL-401, SL-701 and SL-801.

3.      Stemline Therapeutics' lead product is SL-401, a targeted therapy directed to the interleukin-3 receptor, or IL-3R (CD123). CD123 is present on a wide range of hematologic cancers, multiple myeloma, blastic plasmacytoid dendritic cell neoplasm (BPDCN), chronic myeloid leukemia ("CML"), and other leukemias and lymphomas. SL-401 is currently evaluated by the company is an ongoing pivotal phase 2 trial in BPDCN ("BPDCN Trial").

4.      During the Class period, the Company made materially false and/or misleading statements or omitted to state a material fact necessary in order to makes the statements therein not false or misleading by failing to disclose that: (i) a patient had died in the BPDCN Trial from capillary leak syndrome immediately prior to the Company's stock offering despite consistently stating that capillary leak syndrome was a potential side-effect of SL-401; and (ii) SL-401's safety profile did not remain predictable and manageable over increasing treatment duration, drug exposure, and patient experience as represented by the Defendants.

5.      As the truth about the death in the BPDCN Trial was revealed, the stock price declined from $9.75 per share of Stemline Therapeutics stock on February 1, 2017, to close at $5.60 per share on February 2, 2017, a drop of approximately 43%.

6.      As a result of the fraudulent conduct alleged herein, Plaintiff and other members of the Class purchased Stemline Therapeutics securities at artificially inflated prices and suffered significant losses and damages once the truth emerged.

## JURISDICTION AND VENUE

7.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District. Stemline Therapeutics is headquartered in this District, with its principal place of business located at 2 Gansevoort Street, 9th Floor, New York, NY 10014.

## PARTIES

10.     Plaintiff purchased Stemline Therapeutics securities within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto.

11.     Defendant Stemline Therapeutics is a New York corporation with its principal executive offices located at 750 Lexington Avenue, eleventh floor, New York, NY 10022. Stemline Therapeutics' common stock trades on the NASDAQ under the ticker symbol "STML."

12.     Defendant Ivan Bergstein ("Bergstein") is the Company's Chief Executive Officer ("CEO") and Principal Executive Officer.

13.     Defendant David Gionco ("Gionco") is the Company's Chief Accounting Officer ("CAO") and Vice President of Finance.

14.     Defendants in Paragraphs 12-13 are collectively referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

16.     Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about Stemline Therapeutics' product candidates, business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's product trials, operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other

corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

17.     As officers of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Stemline Therapeutics' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19.     Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Stemline Therapeutics securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Stemline Therapeutics' business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase Stemline Therapeutics securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.    COMPANY BACKGROUND

20.     Stemline Therapeutics is clinical stage biopharmaceutical company focused on discovering, acquiring, developing and commercializing proprietary oncology therapeutics. The Company is currently developing three clinical stage product candidates, SL-401, SL-701 and SL-801.

21.     Stemline Therapeutics' lead product is SL-401, a targeted therapy directed to the interleukin-3 receptor, or IL-3R (CD123). CD123 is present on a wide range of hematologic cancers, multiple myeloma, blastic plasmacytoid dendritic cell neoplasm ("BPDCN"), chronic myeloid leukemia ("CML"), acute myeloid leukemia ("AML"), and other leukemias and lymphomas.

22.     On July 28, 2014, Stemline therapeutics announced the opening of an Investigational New Drug Application ("IND") for SL-401 and the start of clinical trials in patients with BPDCN. This trial consists of a lead-in, dose escalation stage that included BPDCN and relapsed refractory AML patients (Stage 1) and a subsequent expansion stage that is enrolling BPDCN patients (Stage 2) that utilizes the optimal dose and regimen identified in Stage 1.

23.    In December 2015, Stemline Therapeutics reported initial data from the completed stage 1 and the expansion into a phase 2 trial. SL-401 is currently being evaluated by the company in the on-going pivotal phase 2 BPDCN Trial.

24.    The Company had already reported the death of two patients during clinical trials after developing capillary leak syndrome and AML as a side-effect of SL-401.

**B.**    **MATERIAL MISSTATEMENTS AND OMISSIONS DURING THE CLASS PERIOD**

25.    The Class Period begins on January 20, 2017, as result of the Company filing after the market closed on January 19, 2017, a Preliminary Prospectus Supplement with the SEC pursuant to Rule 424(b)(5), ("Preliminary Prospectus Supplement"). The Company's offer and the Preliminary Prospectus Supplement were related to the Company's shelf registration statement on Form S-3 previously filed with the SEC on February 3, 2014 and declared effective by the SEC on February 12, 2014. The Form S-3 was signed by the Individual Defendants.

26.    The Preliminary Prospectus Supplement stated in relevant part:

**Recent Developments**

On January 5, 2017, we announced an agreement with the U.S. Food and Drug Administration, or FDA, on the registration pathway for SL-401 in blastic plasmacytoid dendritic cell neoplasm, or BPDCN. To support the filing of a Biologics License Application, or BLA, for full approval in first-line BPDCN, we are currently enrolling an additional small patient cohort, into our ongoing Phase 2 trial. This cohort is expected to enroll between 8-12 first-line BPDCN patients. To date, approximately half of these new patients have been enrolled into the study.

On December 31, 2016 and September 30, 2016, we had cash, cash equivalents, short-term investments and long-term investments of approximately $67.6 million and $74.3 million, as compared to $97.5 million and $104.0 million, as of December 31, 2015 and September 30, 2015, respectively.
SL-401

7

Patients are currently enrolling in SL-401 clinical trials in multiple indications, including a potentially pivotal Phase 2 trial in patients with BPDCN. SL-401 as a single agent is also being advanced through clinical trials in myeloproliferative neoplasms, or MPN, and acute myeloid leukemia, or AML. In addition, SL-401 is being evaluated in combination with certain traditional therapies in a Phase 1/2 trial in patients with relapsed or refractory, or r/r, multiple myeloma.

SL-401 is a targeted therapy directed to the interleukin-3 receptor, or IL-3R (CD123). CD123 is present on a wide range of hematologic cancers including BPDCN, certain MPNs, AML, multiple myeloma, hairy cell leukemia, myelodysplastic syndrome, or MDS, chronic myeloid leukemia, or CML, and other myeloid and lymphoid malignancies. SL-401 has demonstrated anti-tumor activity against a wide range of hematologic cancers in *in vitro* and *in vivo* preclinical models, including BPDCN, MPN, AML, multiple myeloma, CML, and other leukemic and lymphoid malignancies.

Previously, SL-401 was evaluated in an investigator-sponsored Phase 1/2 clinical trial in patients with advanced hematologic cancers; a trial which has since completed. In this trial, SL-401 was administered via daily intravenous infusion for up to five days, for only a single cycle, and demonstrated a manageable safety profile and anti-tumor activity, including complete responses, or CRs, largely in BPDCN but also in r/r AML (Frankel et al. Blood 124, 2014; ASH 2013 Poster #2682; ASH 2015 Poster #3795).

Currently, we are enrolling patients in the following corporate-sponsored SL-401 clinical trials in which SL-401 is administered in a multi-cycle regimen (via daily intravenous infusion for up to five days, repeated every 3-4 weeks):

- A Phase 2 potentially pivotal trial in patients with BPDCN;

- A Phase 2 trial in patients with advanced, high-risk MPNs;

- A Phase 2 trial in patients with AML in CR with minimal residual disease, or MRD; and

- A Phase 1/2 trial, in combination with pomalidomide and dexamethasone, in patients with r/r multiple myeloma.

SL-401 was granted BTD by the FDA in August 2016. In addition, SL-401 was granted Orphan Drug Designation for the treatment of BPDCN

and AML from both the FDA and the European Medicines Agency, or EMA.

SL-401 in BPDCN

Patients are currently enrolling into our ongoing, potentially pivotal Phase 2 trial of SL-401 in BPDCN. The trial is a single arm, open-label, multicenter study.

The trial consists of a lead-in, dose escalation stage that included BPDCN and relapsed/refractory AML patients (Stage 1) followed by an expansion stage of BPDCN patients only (Stage 2) that utilizes the dose and regimen determined in Stage 1. Both Stage 1 and Stage 2 have completed enrollment.

To support a BLA filing for full approval in first-line BPDCN, Stemline is currently enrolling first-line BPDCN patients in an additional cohort (Stage 3) that is expected to enroll between 8-12 first-line BPDCN patients.

During 2016, our academic investigators delivered oral presentations on the SL-401 Phase 2 clinical data in BPDCN at the annual meetings of the American Society of Clinical Oncology, or ASCO, in Chicago, Illinois, the European Hematology Association, or EHA, in Copenhagen, Denmark, and the American Society of Hematology, or ASH, in San Diego, California.

As of the 2016 ASH annual meeting, 32 adult BPDCN patients received SL-401 in a multi-cycle regimen. ***SL-401's safety profile has continued to remain predictable and manageable over increasing treatment duration, drug exposure, and patient experience.*** In first-line patients who received SL-401 at the recommended dose of 12 ug/kg/day, the ORR was 100% (16/16) with a CR rate of 81% (13/16). In relapsed/refractory patients, the ORR was 69% (9/13) with a CR rate of 31% (4/13). Across all lines and all doses, ORR was 84% (27/32) with CR rate of 56% (18/32). CRs include clinical complete responses, or CRc, defined as a CR in non-skin organs with gross reduction in cutaneous lesions and residual microscopic skin disease, and CRi, defined as CR with incomplete hematologic recovery. 69% (11/16) first-line patients who received SL-401 at 12 ug/kg/day were progression-free (range: $1^+$ to $20^+$ months, ongoing), including 5 patients receiving ongoing SL-401 (range: $1^+$ to $15^+$ months, ongoing) and 6 patients who were successfully bridged to stem cell transplant, or SCT (progression-free range from first SL-401 dose: $5^+$ to $20^+$ months, ongoing). 46% (6/13) relapsed/refractory patients were progression-free (range: $1^+$ to $8^+$ months, ongoing), including 5 patients receiving ongoing SL-401 (range: $1^+$ to $4^+$ months, ongoing) and

1 patient who was successfully bridged to SCT (progression-free from first SL-401 dose: 8⁺ months, ongoing). Progression-free survival, or PFS, and overall survival, or OS, data continue to trend favorably and patients continue to be followed.

27.    The Preliminary Prospectus Supplement omitted to state the death of a patient on January 18, 2017 during the BPDCN Trial, although stating "recent developments" from 2017 and 2016.

28.    On January 20, 2017, after the market close, Stemline Therapeutics filed a Prospectus Supplement ("Prospectus Supplement") with the SEC pursuant to rule 424(b)(5). In the Prospectus Supplement, Stemline Therapeutics offers 4,500,000 shares of its common stock at a price of $10.00 per share, with the underwriters' option to purchase an additional 675,000 shares. Stemline Therapteutics estimated the total proceeds of $48,645,000.

29.    In the Prospectus Supplement, the Company again stated that:

As of the 2016 ASH annual meeting, 32 adult BPDCN patients received SL-401 in a multi-cycle regimen. ***SL-401's safety profile has continued to remain predictable and manageable over increasing treatment duration, drug exposure, and patient experience.*** In first-line patients who received SL-401 at the recommended dose of 12 ug/kg/day, the ORR was 100% (16/16) with a CR rate of 81% (13/16). In relapsed/refractory patients, the ORR was 69% (9/13) with a CR rate of 31% (4/13). Across all lines and all doses, ORR was 84% (27/32) with CR rate of 56% (18/32). CRs include clinical complete responses, or CRc, defined as a CR in non-skin organs with gross reduction in cutaneous lesions and residual microscopic skin disease, and CRi, defined as CR with incomplete hematologic recovery. 69% (11/16) first-line patients who received SL-401 at 12 ug/kg/day were progression-free (range: 1⁺ to 20⁺ months, ongoing), including 5 patients receiving ongoing SL-401 (range: 1⁺ to 15⁺ months, ongoing) and 6 patients who were successfully bridged to stem cell transplant, or SCT (progression-free range from first SL-401 dose: 5⁺ to 20⁺ months, ongoing). 46% (6/13) relapsed/refractory patients were progression-free (range: 1⁺ to 8⁺ months, ongoing), including 5 patients receiving ongoing SL-401 (range: 1⁺ to 4⁺ months, ongoing) and 1 patient who was successfully bridged to SCT (progression-free from first SL-401 dose: 8⁺ months, ongoing). Progression-free survival, or PFS, and overall survival, or OS, data continue to trend favorably and patients continue to be followed.

Emphasis added.

30.    Similarly, the Prospectus Supplement omitted to state the death of a patient on January 18, 2017 during the BPDCN Trial, although stating "recent developments" from 2017 and 2016.

31.    The statements in paragraphs 25-30 above were materially false and misleading above were false and/or misleading as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) a patient had died during the clinical trial on January 18, 2017, from capillary leak syndrome, a suspected or known side effect of SL-401; (ii) SL-401's safety profile did not remain predictable and manageable over increasing treatment duration, drug exposure, and patient experience; (iii) as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Stemline Therapeutics' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## C.    THE TRUTH EMERGES

32.    On February 2, 2017, Adam Feuerstein from *TheStreet* published an article named "Side Effect Kills Cancer Patient in Stemline Therapeutics Drug Trial; Company Raises Money." The article stated in pertinent part:

> ***Investors who bought into a $45 million Stemline Therapeutics (STML) stock offering on Jan. 19 were not told that one day prior to the financing, a cancer patient in a clinical trial died from a severe side effect, a type of low blood pressure tied to the company's drug SL-401.***
>
> Stemline has disclosed two previous patient deaths related to the same SL-401 toxicity, known as capillary leak syndrome.
>
> ***The third death in Stemline's SL-401 study due to capillary leak syndrome, not yet reported by the company but confirmed by a member of the patient's family, is troubling. It occurred after Stemline had already increased safety monitoring and added new dosing rules to reduce the incidence and severity of the side effect.***

Capillary leak syndrome occurs when large volumes of plasma and other blood components leak from blood vessels into the body cavity. This leads to swelling and a sharp drop in blood pressure that can cause organ failure and death.

The inability to control serious, potentially fatal, side effects can derail otherwise highly effective experimental therapies, even cancer drugs. Last year, the U.S. Food and Drug Administration placed a clinical hold on a promising CAR-T cancer therapy from Juno Therapeutics (JUNO) because a handful of patients died from brain swelling. The Juno therapy remains on FDA clinical hold to this day, with most investors believing the company will be forced to abandon further development.

To date, SL-401 has demonstrated robust overall tumor response rates of 84%, including 56% complete or near-complete response in patients enrolled in its clinical trial. But the drug is also now tied to three patient deaths. Stemline cannot afford a safety setback or FDA clinical hold similar to what happened to Juno.

The company is rushing to complete enrollment totaling approximately 50 patients in the SL-401 phase II study by the end of the current quarter. Stemline intends to use the study as the basis for a marketing application to the FDA in the second half of the year.

That's an aggressive timeline, but one that could secure Stemline's first-ever cancer drug approval in 2018. If approved, SL-401 would be used to treat blastic plasmacytoid dendritic cell neoplasm, or BPDCN, an ultra-rare blood cancer that attacks a specialized form of immune cells.
Stemline was asked to confirm and provide more details about the death of the BPDCN patient on Jan. 18, one day before the company sold 4.5 million shares of stock at $10 per share. In response, Stemline Chief Operating Officer Ken Hoberman provided the following statement:

> *"We are not in a position to comment about any specific outcomes that may or may not have occurred in any of our existing trials. As you know, in any trial of an experimental agent for patients with advanced cancer, patient deaths often occur. When deaths occur in a trial, then careful analysis must be done to understand probable causes and relation, if any, of the death to the use of the experimental product. It would be inappropriate for Stemline to comment on the death of any patient or patients in a trial, including any trial of SL-401, until such an analysis has been conducted, has concluded, and has yielded any information that should be shared publicly."*

According to her sister, who spoke with TheStreet, the patient in question was diagnosed with BPDCN last fall and recruited into Stemline's pivotal clinical trial for SL-401. The drug is administered as a daily infusion for five days every three weeks.

The patient received the first two doses of SL-401 on Jan. 12 and 13. Her third daily infusion was postponed because of deteriorating health due to side effects. On Jan. 17, the patient was diagnosed with capillary leak syndrome. She died the next day, having received only two of the scheduled five doses of SL-401 in the initial treatment cycle of the clinical trial.

"It happened really fast, out of nowhere ... We had lunch together the week before she went into the hospital. She was fine," said the patient's sister. (The patient is not being identified by name for privacy reasons.)

Stemline identified capillary leak syndrome as a serious side effect of SL-401 during the initial, dose-ranging stage of the phase II study, which enrolled 15 patients. One BPDCN patient died due to capillary leak syndrome. The same cause of death was suspected for a second patient diagnosed with advanced acute myeloid leukemia, according to Stemline filings with the Securities and Exchange Commission.

During the dose-ranging stage of the phase II study, Stemline implemented additional safety precautions to reduce the risk of capillary leak syndrome before enrolling additional BPDCN patients into the expansion stage of the study.

The extra safety vigilance appeared to be working. When Stemline last presented interim results from the SL-401 phase II study in December at the American Society of Hematology annual meeting, none of the subsequently enrolled BPDCN patients had experienced severe (worse than grade 2) capillary leak syndrome.

***But that clean safety streak ended with the death of the BPDCN patient on Jan. 18, raising concerns that Stemline may not have the risk of fatal capillary leak syndrome under control.***

Emphasis added.

33.     Later the same day, the Company issued a press release admitting it had received a report that a patient death had occurred on Jan 18, 2017 ("January 18 Press Release"). The January 18 Press Release stated, in relevant part:

NEW YORK, Feb. 02, 2017 (GLOBE NEWSWIRE) -- Stemline Therapeutics, Inc. (Nasdaq:STML), a clinical-stage biopharmaceutical company developing novel oncology therapeutics, provides an update on its ongoing pivotal Phase 2 trial in blastic plasmacytoid dendritic cell neoplasm (BPDCN), using Stemline's experimental compound, SL-401. BPDCN at present has no approved treatment.

***On January 18, the Company received a report that a patient death had occurred. The patient had developed capillary leak syndrome (CLS), a known, sometimes fatal, and well-documented side effect of SL-401.*** The cause of the patient's death has not yet been determined. ***The safety profile for SL-401 includes CLS, and there have been previous deaths reported in patients with CLS in this trial, which have been disclosed in public presentations. That CLS is an expected complication of the administration of SL-401 has also been identified in filings with the Securities and Exchange Commission (SEC) and U.S. Food and Drug Administration (FDA), as well as in the study's informed consent forms and other information provided to investigators.***

As with all study events, the Company has and will continue to report the data to the FDA in accordance with the study protocol and applicable regulations. Stemline plans to provide a clinical and safety update on this cohort when the cohort and data are complete. The pivotal Phase 2 trial with SL-401 in BPDCN is currently ongoing, patient enrollment is ahead of schedule, and patients continue to receive SL-401 in the trial. Our timelines for study completion and BLA submission remain on track.

Emphasis added.

34.    On the news, the stock price declined from $9.75 per share of Stemline Therapeutics stock on February 1, 2017, to close at $5.60 per share on February 2, 2017, a drop of approximately 43%.

### D.    ADDITIONAL SCIENTER ALLEGATIONS

35.    As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information

14

reflecting the true facts regarding Stemline Therapeutics, their control over, and/or receipt and/or modification of Stemline Therapeutics' allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Stemline Therapeutics, participated in the fraudulent scheme alleged herein.

      E.      **LOSS CAUSATION AND ECONOMIC LOSS**

      36.      During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Stemline Therapeutics' misconduct and its lack of operational and financial controls was revealed, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Stemline Therapeutics' share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

      37.      At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure

to disclose a true and accurate picture of Stemline Therapeutics' product candidates, business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Stemline Therapeutics' common stock to be artificially inflated. Plaintiff and other Class members purchased Stemline Therapeutics' securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

F.    **PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET**

38.    At all relevant times, the market for Stemline Therapeutics securities was an efficient market for the following reasons, among others:

(a) Stemline Therapeutics securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

(b) During the Class Period, Stemline Therapeutics securities were actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Stemline Therapeutics filed with the SEC periodic public reports during the Class Period;

(d) Stemline Therapeutics regularly communicated with public investors via established market communication mechanisms;

(e) Stemline Therapeutics was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Stemline Therapeutics was rapidly reflected in

and incorporated into the Company's stock price during the Class Period.

39.     As a result of the foregoing, the market for Stemline Therapeutics securities promptly digested current information regarding Stemline Therapeutics from all publicly available sources and reflected such information in Stemline Therapeutics' stock price. Under these circumstances, all purchasers of Stemline Therapeutics securities during the Class Period suffered similar injury through their purchase of Stemline Therapeutics' securities at artificially inflated prices, and a presumption of reliance applies.

40.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's true net losses and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Stemline Therapeutics.

## G.     NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

42.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

17

43.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Stemline Therapeutics who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## **CLASS ACTION ALLEGATIONS**

44.    Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Stemline Therapeutics common stock during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

45.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Stemline Therapeutics securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Stemline Therapeutics or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of November 8, 2016, Stemline Therapeutics had

19,158,732 outstanding shares of common stock. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

47.     Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)     whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)     whether the price of Stemline Therapeutics common stock during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Stemline Therapeutics common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

52.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Stemline Therapeutics securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Stemline Therapeutics as specified herein.

54.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Stemline Therapeutics' value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Stemline Therapeutics and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Stemline Therapeutics securities during the Class Period.

55.    Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of

information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Stemline Therapeutics' operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Stemline Therapeutics' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Stemline Therapeutics' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Stemline Therapeutics' securities during the Class Period at artificially high prices and were or will be damaged thereby.

58.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Stemline Therapeutics' financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Stemline Therapeutics securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

59.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60.    As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

61.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II

### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

62.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of Stemline Therapeutics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

64.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.    As set forth above, Stemline Therapeutics, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

66.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

67.    This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)    Determining that this action is a proper class action, certifying Plaintiff as class

representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)    Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: February 3, 2017

/s/ *Christopher J. Kupka*

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Adam M. Apton
Christopher J. Kupka
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com
Email: ckupka@zlk.com

*Attorneys for Plaintiff*

CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Robert Braswell, declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation;

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary;

4. My transaction(s) in Stemline Therapeutics, Inc. securities which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I hereby certify under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of February 2017.

Signed:

NAME: Robert Braswell

**Robert Braswell**
**Transactions in Stemline Therapeutics, Inc. (STML) Common Stock**
**Class Period: January 20, 2017 and February 1, 2017, inclusive**

| Date of Transaction | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|
| 1/20/2017 | B | 1,200 | 10.695 |